Matthew **DERRY**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2006–SC–000181–DG.

Supreme Court of Kentucky.

Dec. 18, 2008.

---

Thomas More Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
NOBLE.

Appellant, Matthew Derry, challenged his conviction on the grounds that his conviction in Metcalf County, after a mistrial had been declared on the same charges in the middle of a previous trial in an adjacent county for lack of venue, violated the constitutional prohibition on double jeopardy. The Court of Appeals affirmed his conviction. Because the mistrial was the result of Appellant's own motion, the Court of Appeals ruled correctly that there was no double jeopardy violation.

## I. Background

Appellant, Matthew Derry, was charged with Rape in the First Degree, Sodomy in the First Degree and Sexual Abuse in the First Degree in an indictment filed in Bar-

ren Circuit Court. The case proceeded to trial on March 5, 2003 in Barren County. The jury was empanelled and sworn, and testimony was taken from three witnesses. At some point, the Commonwealth was put on notice that the house where the crime occurred actually sat in Metcalfe County. On recess, the parties and the trial court judge, according to his later in-court statements, "checked with the Sheriff, ... checked with the Property Valuation Administrator, and ... looked at the maps," and concluded that while part of the real estate was in Barren County, the house was in fact in Metcalfe County. After explaining this to the jury, the trial court then asked, "So, is there a motion to dismiss the indictment?", to which the defense attorney replied, "Yes, your honor." The trial court then specifically granted the motion to dismiss the indictment on the record.

Later that day, the trial court entered an order declaring a mistrial and dismissing the indictment without prejudice. In his comments to the jury, the judge had said that the mistake about where the events occurred "will require that I dismiss this case without prejudice" and that the Commonwealth could "reindict if they choose to proceed in Metcalfe County," and held that "Barren Circuit Court has no venue in this matter."

The Commonwealth did choose to indict the Appellant in Metcalfe County. The Appellant objected to the indictment on the ground of double jeopardy, claiming that when the trial court dismissed the indictment in Barren County, it was tantamount to a directed verdict since jeopardy had attached and the Commonwealth was unable to prove its case in regard to venue. The trial court overruled the motion on the basis that the dismissal had been a mistrial due to "manifest necessity." Appellant subsequently entered a conditional *Alford* plea to one count of Sexual Abuse in the First Degree, and was sentenced to two years, a $1000 fine, and three years of conditional discharge. He was required to register as a sexual offender and was ordered to sexual offender assessment and treatment.

The Court of Appeals held that double jeopardy did not bar Appellant's subsequent prosecution in Metcalfe County and affirmed his conviction. This Court granted discretionary review.

## II. Analysis

Appellant claims that he was entitled to a dismissal of the Metcalfe County indictment because jeopardy had attached during the trial of the previous indictment in Barren County. Specifically, he argues that there was no manifest necessity for the trial court's mistrial because the trial could have continued in Barren County He also argues that he actually moved for a dismissal, rather than a mistrial, and the trial court granted the dismissal on the grounds that an element—venue—could not be proven, thus making the trial court's ruling "the functional equivalent of a directed verdict. . . ."

### A. Venue

■ Appellant is correct to the extent that he argues that the trial could have proceeded in Barren County after discovery that the crime actually occurred in Metcalf County. Venue is often tied to the concept of "vicinage," which refers to the area surrounding the place of commission of an offense. *Spencer v. Commonwealth,* 194 Ky. 699, 240 S.W. 750, 752 (1922). The Kentucky Constitution, at section 11, provides that an accused in a criminal case "shall have a speedy public trial by an impartial jury of the vicinage. . . ." Just after, the language refers to venue, by allowing the General Assembly to provide

by law how both the Commonwealth and the defendant may obtain a change of venue to the most convenient county in which a fair trial can be obtained. Possibly because of this proximity, venue and vicinage have sometimes been regarded as synonymous, though they are actually two distinct concepts. *See Woosley v. Commonwealth,* 293 S.W.2d 625, 626 (Ky.1956).

■■■ Neither vicinage nor venue is inviolable. A trial is not made unconstitutional because all members of the jury were not from the vicinage. *Baxter v. Commonwealth,* 292 Ky. 204, 166 S.W.2d 24, 29 (1942). Nor is a trial unconstitutional because venue must be changed in order to get a fair trial, as the plain language of the Constitution provides. *Shipp v. Commonwealth,* 124 Ky. 643, 99 S.W. 945, 948 (1907). The vicinage language is geared more toward allowing jurors to have familiarity with the location of a crime scene than it is to dictate place of trial. Venue, on the other hand, is a statutory enactment establishing where a case must be tried. Although there is some confusion on this, current law does not deem venue to be jurisdictional. *See Commonwealth v. Cheeks,* 698 S.W.2d 832, 835 (Ky.1985); *Bedell v. Commonwealth,* 870 S.W.2d 779, 781 (Ky.1993). Though the older versions of the venue statutes expressly stated that the concept was jurisdictional, the modern statutes do not. *Compare* Ky. Stat. § 1143–1147 (1936) (section titled "Jurisdiction of the Courts" and using the word "jurisdiction" instead of "venue"), *with* KRS 452.510–452.650 (enacted in 1962 and using only the word "venue").

However, Kentucky statutory law and case law have continued to accord a special status to venue. In criminal matters, KRS 452.510 requires, unless otherwise provided by law, that venue of criminal prosecutions be in the county or city in which the offense was committed. This incarnation of the statute was drafted in 1962, but follows older versions. This notion of venue has long been the law. *See Castle v. Commonwealth,* 200 Ky. 577, 255 S.W. 151 (1923) (holding that prosecutions must be confined to offenses committed within the county, and the indictment must describe the offense, time and place of commission).

Much of the confusion about venue and jurisdiction comes from the evolution of our statutory schema. Prior to 1962, venue was a jurisdictional fact because the statutes of the time said so, and it had frequently been treated as such. As Commissioner Stanley wrote,

> The Bills of Rights of the Constitution of Kentucky (Section 11), and of the Federal Constitution (Sixth Amendment) declare that a person convicted of a crime shall be tried by a jury of the district or vicinage wherein the crime was committed, except as provision for a change of venue may be made. Section 1145, Kentucky Statutes, declares that all offenses shall be tried in the courts of the county in which they were committed, except in cases otherwise provided for. Section 18 of the Criminal Code of Practice prescribes the local jurisdiction of circuit courts "shall be of offenses committed within the respective counties in which they are held."

*Rounds v. Commonwealth,* 282 Ky. 657, 139 S.W.2d 736, 738 (1940). *But see Stewart v. Sampson,* 285 Ky. 447, 148 S.W.2d 278, 281–82 (1941) ("The term 'jurisdiction' has been variously and many times erroneously applied and confused with the related question of Venue', the latter of which relates exclusively to the situs of the particular court in which—according to the practice of the forum—the action should be brought. Correctly speaking, such questions do not relate to the jurisdiction of the court over the subject matters involved,

but only to the particular court wherein the action is localized, notwithstanding all other courts of the same class within the sovereignty possess jurisdiction of like subject matters. Whether or not a court in which an action is brought and is pending is one of proper venue generally depends upon collateral facts with reference to the residence of litigants, and other matters localizing the action, and it is universally held that an erroneous decision of the court in the determination of the facts required for such localizing does not render its judgment void but only erroneous and until it is set aside in some manner provided by law it remains valid in all respects."). Thus, there was little question that venue was jurisdictional at that time. This view was reaffirmed in the landmark venue case, *Woosley v. Commonwealth,* which stated,

Venue is a jurisdictional fact of locality charged in the indictment and put in issue by a plea of not guilty. Venue must be proved . . .

293 S.W.2d at 626.

Things began to change in 1962, however, when the present set of criminal venue statutes was enacted. The new statutes no longer state that venue was jurisdictional.[1] The change led this Court's predecessor to declare, "As the Commonwealth points out, the prosecution of a charge in the circuit court of the wrong county *is not a jurisdictional defect* but one of venue, which can be waived." *Chancellor v. Commonwealth,* 438 S.W.2d 783, 784 (Ky.1969) (emphasis added). By 1985, significant changes had occurred in the constitutional and structural make-up of the courts of the Commonwealth, with the 1976 Judicial Article having made Kentucky a state with a unified court system.

In light of all these changes, this Court undertook to clarify the current state of venue and jurisdiction in *Commonwealth v. Cheeks* as follows:

The jurisdiction to preside over the prosecution of offenses committed in this state is vested in the circuit courts. . . . The proper forum in which the case is to be prosecuted is the circuit court in the county or city in which the offense was committed.

In the past, it has been erroneously stated that a circuit court has no "jurisdiction" over the prosecution of an offense that has been wholly committed in another county. The circuit courts of this state are never without "jurisdiction" to preside over the prosecution of offenses committed in Kentucky: rather, KRS 452.510 stipulates that "venue" is improper in the circuit court of a county other than that in which the offense has been committed.

698 S.W.2d 832, 834–35 (citations omitted).

Because of these systemic changes, the Court then described the relationship of venue to a prosecution:

"Venue" then is merely a *statutory prescription* that the prosecution be in the county in which the offense has been committed and that the prosecution is in a court which has "jurisdiction" to preside over the case, i.e. the circuit court of that county. The statutory prescription also *requires proof by the prosecutor* that the offense did in fact occur in the county in which the case is being prosecuted.

*Id.* at 835 (emphasis added).

The most important aspect of modern venue law, however, is a point touched on

---

1. Sections 1143 to 1147 of the old Kentucky Statutes, which included the "jurisdiction" language, were recodified in 1942 at KRS 431.010 to 431.050, which in turn were repealed in 1962 when the new versions were enacted.

by *Chancellor*: that KRS 452.650 allows a defendant to waive venue of a prosecution. The statute further states that failure to make a timely motion to transfer prosecution to the *proper county* shall be deemed a waiver of the venue of the prosecution. If venue is improper in the county where an indictment is brought, the action can be transferred to a county where venue is proper upon a timely motion. RCr 8.26. Current law requires that such a motion be made prior to trial for it to be timely under KRS 452.650. *See Faison v. Commonwealth,* 405 S.W.2d 943, 945 (Ky.1966) (requiring motion to transfer be made prior to trial to be timely). In fact, in his brief, Appellant admits, "Any problem with the venue of the prosecution had been waived by the defense by failing to [raise the issue] prior to the start of the first trial."

Thus, this Court concludes that the Barren Circuit Court was not without jurisdiction to try Appellant. At most, Appellant enjoyed a statutory right to be tried in the county where the crime occurred. However, it is clear that Appellant waived this venue right by failing to raise the issue prior to the beginning of his trial in Barren County.

This conclusion, however, does not resolve the case before this Court because the Barren Circuit Court ended Appellant's trial and prosecution in Barren County and allowed him to be reindicted in neighboring Metcalfe County.

## B. Double jeopardy

■ A defendant may not be tried twice for the same crime. U.S. Const. amend. V; Ky. Const. § 13. The core of the protection afforded by the Double Jeopardy Clause is the "valued right to have his trial completed by a particular tribunal." *Crist v. Bretz,* 437 U.S. 28, 36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (inter-

nal quotation marks omitted). KRS 505.030 establishes that a prosecution for a violation of the same statutory provision based on the same facts is barred by the former prosecution when a defendant is acquitted or was convicted and the conviction has not been set aside; there was insufficient evidence; a final order or judgment has not been set aside which required a factual determination inconsistent with one necessary to a conviction in the subsequent prosecution; or the former prosecution was improperly terminated. *See also Graham v. Commonwealth,* 562 S.W.2d 625 (Ky.1978). However, under *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), double jeopardy is not violated when the mistrial is both the result of a defendant's motion and does not turn on issues related to guilt.

Clearly, jeopardy had attached in Appellant's first trial because the jury had been empanelled and sworn. *United States v. Martin Linen Supply,* 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). The question then is whether Appellant's retrial was barred by double jeopardy.

■ Appellant attempts to demonstrate a double jeopardy bar by fitting what happened at his first trial under the proscriptions in KRS 505.030 under the theory that the trial court's dismissal/mistrial was effectively a directed verdict in his favor. The problem with this is that venue is neither jurisdictional (as discussed above) nor is it an element of any offense (as admitted by Appellant's brief). And as this Court's predecessor noted, venue "does not affect the issue of guilt or innocence." *Rounds,* 139 S.W.2d at 737. Because venue and the determination of any facts related to it do not affect guilt, a court's decision to terminate a trial for want of proper venue cannot amount to an acquittal. An acquittal requires either the

judge or jury to evaluate and weigh the evidence related to guilt and to determine that it is legally insufficient to sustain a conviction. That did not occur here.

The fact that the trial court was under the mistaken impression that venue was a necessary element and initially described its action as a dismissal does not change this, since " 'the trial judge's characterization of his own action cannot control the classification of the action.' " *Scott,* 437 U.S. at 96, 98 S.Ct. 2187 (quoting *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). The trial judge ended the trial after it began and before a verdict was reached on grounds unrelated to guilt or innocence: such action constitutes a mistrial. *See Radford v. Lovelace,* 212 S.W.3d 72, 78 (Ky.2006) (" '[A] mistrial, by definition, does not dispose of the merits of a case or necessarily preclude future litigation ....' " quoting *Macklin v. Ryan,* 672 S.W.2d 60, 61 (Ky.1984)). The trial court recognized this notion by describing his ruling as a mistrial in the written order entered after the oral "dismissal."

This same reasoning applies to the fact that Appellant requested a dismissal (rather than a mistrial), which he argues was more of a directed verdict motion, though he now admits that it was improper. Because Appellant asked to end the proceeding before the merits could be addressed by the jury, he actually asked for a mistrial. (A dismissal of the indictment could follow, but the trial had to be ended first.) There can be no question that when defense counsel asked for a dismissal, he knew the court's reasoning and intentions because he had just heard the court explain to the jury that the case was to be dismissed without prejudice and that the Commonwealth could choose to reindict in Metcalfe County. Thus, the substance of the requested relief, much like the sub-stance of the relief itself, is the key. Appellant's action, whatever its name, ended the trial and prevented the case from being submitted to the jury, thus making it very similar to what happened in *Scott,* which the U.S. Supreme Court described as follows:

> [I]n the present case, respondent successfully avoided ... a submission of the ... indictment by persuading the trial court to dismiss it on a basis which did not depend on guilt or innocence. He was thus neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him.

*Scott,* 437 U.S. at 99, 98 S.Ct. 2187.

This means that Appellant's subsequent prosecution in Metcalf County was not barred because there is no double jeopardy violation "where the defendant himself seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence...." *Scott,* 437 U.S. at 101, 98 S.Ct. 2187. Appellant implies that *Scott* is not controlling because the dismissal/mistrial was the result of an agreement between the defense and the prosecution. That the Commonwealth had no objection to Appellant's motion, however, does not change the fact that Appellant's own motion led to the trial court's decision to end the trial. *See id.* at 98–99, 98 S.Ct. 2187 ("[I]n a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause ...."). Simply put, the interests protected by Double Jeopardy Clause are not implicated where a defendant initiates and receives (and perhaps where one consents to) a termi-

nation of the proceedings against him that is not related to guilt or the lack thereof. *Id.* at 98, 98 S.Ct. 2187 ("This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.").

The rule to be applied by this Court is perhaps best summed up by the following:

> Where ... a *defendant* successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution. "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by a prosecutorial or judicial error." Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.

*Id.* at 93–94, 98 S.Ct. 2187 (quoting *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)) (alteration in original). The application of this rule to this case is thus simple: Because Appellant moved to terminate the proceedings against him in Barren County on grounds unrelated to his lack of guilt, he voluntarily elected not to be tried by the sitting Barren County jury, and his subsequent reprosecution in Metcalfe County was not barred by double jeopardy.

### III.   Conclusion

This case has unusual facts that serve to juxtapose the concepts of venue and double jeopardy, and allow for clarification of both. Because venue is a statutory prescription of where the trial should be held, Appellant was initially entitled to have his case tried in Metcalfe County where the crime actually occurred. Venue, however, is waivable under KRS 452.650. To avoid such a waiver, improper venue must be raised prior to trial. Appellant did not raise the issue of improper venue in this case prior to his first trial, thus he waived any venue right he might have had.

Once the first trial began and a Barren County jury was selected and sworn, Appellant had a right to be tried by that jury. This is where a second and different type of waiver occurred. Appellant waived any claim to a double jeopardy violation in a subsequent trial in Metcalfe County when he made a motion to end the Barren County trial on grounds other than guilt or nonguilt.

For these reasons, the Court of Appeals is affirmed.

ABRAMSON, CUNNINGHAM, SCHRODER and VENTERS, JJ., concur. MINTON, C.J., and SCOTT, J., concur in result only.